437 A.2d 1180

COMMONWEALTH of Pennsylvania,

v.

**William HINES, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 14, 1981.

Decided Dec. 17, 1981.

556

Paul Bogdon, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Kathryn L. Simpson, Asst. Dist. Atty., Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN and WILKINSON, JJ.

## OPINION

ROBERTS, Justice.

This is an appeal from an order of the Court of Common Pleas of Allegheny County denying appellant's petition for postconviction relief. In the petition, appellant sought to

withdraw his guilty plea, as he had in the trial court both before and after sentencing, on the ground that it was involuntarily entered. We conclude that the trial court improperly accepted appellant's plea of guilty since the guilty plea colloquy demonstrated no factual basis for appellant's guilty plea and no basis to conclude that appellant understood the nature and elements of the charges against him and the consequences of his plea. Hence, we reverse the order of the PCHA court, vacate appellant's plea of guilty, and remand for trial.[1]

Appellant was indicted in 1970 on charges of murder and voluntary manslaughter for the killing of a seventeen-year-

1. The Commonwealth commendably recognizes that on this record there is no procedural bar to this Court's consideration and decision of the substantive issue of the voluntariness of appellant's guilty plea. Such recognition is particularly commendable in light of the PCHA court's failure properly to interpret and apply this Court's earlier decision in *Commonwealth v. Hines*, 461 Pa. 271, 336 A.2d 280 (1975). There, when presented with an appeal from the denial of appellant's first PCHA petition to withdraw his guilty plea as involuntarily entered, we declined to reach the issue of voluntariness decided adversely to appellant by the PCHA court. We held only that appellant had failed to rebut the presumption of waiver which arose from his failure to file a direct appeal. Neither ineffective assistance of counsel nor any other extraordinary circumstance for failing to file a direct appeal was alleged in the PCHA petition.

Contrary to the PCHA court's conclusion that this Court's decision on appellant's first PCHA petition was "dispositive" of the issue of voluntariness, an issue we never reached, the issue of voluntariness is now properly presented for review. Both at trial and on his first PCHA petition, appellant was represented by counsel from the Public Defender's Office of Allegheny County. Following this Court's decision on the first PCHA petition, appellant employed his present counsel. Thus, on the PCHA petition now before the Court, for the first time appellant is represented by counsel who is not associated with the same office as his trial counsel. The present PCHA petition to withdraw his guilty plea, filed on August 21, 1980, alleges that trial counsel was ineffective for failing to file an appeal challenging the voluntariness of the plea, and that prior PCHA counsel was ineffective for not raising trial counsel's ineffectiveness. Appellant's claims of ineffectiveness are an extraordinary circumstance precluding waiver, see *Commonwealth v. Holmes*, 468 Pa. 409, 364 A.2d 259 (1976), have not been previously litigated, and have been raised at the earliest opportunity, see *Commonwealth v. Dimitris*, 484 Pa. 153, 398 A.2d 990 (1979); *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

old girl who had been raped and stabbed to death. Appellant was fifteen years old and had completed second grade. Pursuant to a court-directed examination, a doctor concluded that appellant was "not psychotic, and although of low intelligence, . . . [was] competent to defend himself." The evidence connecting appellant to the scene of the crime consisted of circumstantial evidence, primarily a pair of pink trousers, and a confession by appellant to police on the night of his arrest. In the confession, appellant admitted the rape, but denied having killed the victim. He attributed the killing to an alleged accomplice.

Appellant pleaded guilty to murder generally on September 29, 1970. After a degree-of-guilt hearing, he was found guilty of murder of the first degree and sentenced to life imprisonment.

## I.

It is a long established principle of constitutional due process that the decision to plead guilty must be personally and voluntarily made by the accused. *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function, The Defense Function § 5.2 (Approved Draft, 1971); Comment, Criminal Waiver: The Requirement of Personal Participation, Competence and Legitimate State Interest, 54 Calif.L.Rev. 1262 (1966). Because a guilty plea is not only an admission of conduct but also is an admission of all the elements of a formal criminal charge, and constitutes the waiver of constitutionally-guaranteed rights, the voluntariness of a guilty plea must be affirmatively established. "Presuming waiver from a silent record is impermissible." *Boykin v. Alabama, supra,* 395 U.S. at 242, 89 S.Ct. at 1712.

The constitutional standard for determining whether a guilty plea is voluntarily made is the same as that which generally governs the waiver of constitutional rights. The

guilty plea must constitute "an intentional relinquishment or abandonment of a known right or privilege." *Boykin, supra,* 395 U.S. at 243 & 243 n.5, 89 S.Ct. at 1712 & 1712 n.5, quoting and applying *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Thus,

> "[a] plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, see, *e.g., Johnson v. Zerbst,* 304 U.S. 458, 464–465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense. *Smith v. O'Grady,* 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859."

*Henderson v. Morgan, supra,* 426 U.S. at 645 n.13, 96 S.Ct. at 2257 n.13.

In order to satisfy the constitutional requirement that a valid guilty plea must stand as an "intelligent admission of guilt," the law of this Commonwealth has long required that before a judge may properly accept a plea of guilty, a colloquy with the defendant must demonstrate that there is a factual basis for the plea and that the defendant understands the nature and elements of the offense charged. See, *e.g., Commonwealth v. Tabb,* 477 Pa. 115, 383 A.2d 849 (1978); *Commonwealth v. Minor,* 467 Pa. 230, 356 A.2d 346 (1976); *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974); *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A.2d 196 (1968). Accord, ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty §§ 1.4–1.6 (Approved Draft, 1968); Standards Relating to the Function of the Trial Judge § 4.2 (Approved Draft, 1972).

The only portion of the guilty plea colloquy which bears on these requirements is the following:

"THE CLERK: How do you plead?

THE DEFENDANT: Guilty.

THE CLERK: Are you guilty or not guilty of the felonies wherewith you stand charged?

THE DEFENDANT: I am guilty.

THE CLERK: Your Honor, the defendant being duly arraigned pleads guilty generally.

THE COURT: You must understand that by this plea, the plea, of course, is a plea to second degree murder, and it becomes the duty of the Commonwealth to raise this degree of the crime, if such there be, from second to first. Before we proceed with this case, I want to be absolutely certain that you understand the nature of the plea, and I would like to have the accused interrogated at this point.

.      .      .      .      .

BY MR. BAXTER [defense counsel] OF THE DEFEND-ANT:

Q.  William, do your understand what you are charged with here today?

A.  Yes, sir.

Q.  You do?

A.  Yes.

Q.  And do you understand what they are saying you did?

A.  Yes, sir.

Q.  Now, you are pleading guilty to this charge.  Is that right?

A.  Yes, sir." [2]

**2.** The remainder of the colloquy with appellant was as follows: "[By Mr. Baxter of the defendant:]

Q.  Now, have any promises or threats been made to you to induce you to plead guilty?

A.  No, sir.

Q.  Have I threatened you in any way in order to get you to plead guilty?

A.  No, sir.

Q.  Has the District Attorney's office or the District Attorney, Mr. Minahan, threatened you in any way to plead guilty?

A.  No, sir.

Q.  Has this Court threatened you in any way to plead guilty?

A.  No, sir.

This colloquy, which did no more than inform appellant of the name of the crime after he had pled guilty, is grossly inadequate.

Where, as here, no facts underlying the alleged offense are adduced at the time the guilty plea is entered, there is no factual basis for the trial judge to accept the plea. Although charged with murder, appellant was not even asked the threshold question of whether he had killed the

Q. Have any promises been made to you to plead guilty?
A. No, sir.
Q. Have I said that the Judge told me that he would do something for you if you plead guilty?
A. No, sir.
Q. Did I tell you that the District Attorney would do something for you if you pled guilty?
A. No, sir.
Q. Are you pleading now of your own free will?
A. Yes, sir.
MR. BAXTER: Your Honor, do you have any more questions you would like to ask?

EXAMINATION
BY THE COURT OF THE DEFENDANT:
Q. Yes. Prior to entering your plea here, Mr. Hines, you have had a full opportunity to discuss this matter, did you not, with your present counsel?
A. Yes, sir.
Q. And yesterday did you have an opportunity also to discuss this matter with other counsel?
A. Yes, sir.
Q. And as a result of those discussions that you had, did you discuss this with anyone else?
A. No, sir.
Q. Well, did you discuss it with your parents?
A. We did this in the hall together, sir.
Q. That is what I mean. So that your parents were there also. Is that correct?
A. Yes, sir.
Q. Was that as a result of all these discussions that you have had that you are now entering this plea?
A. I don't know what you mean, sir.
Q. Well, you are entering this plea as a result of the various discussions that you had with your parents and with your counsel? Is that correct? You talked about this between your attorneys and your parents. Is that correct?
A. Yes, sir. Yes, sir.
Q. And the end result was that you desire to enter a plea of guilty. Is that correct?
A. Yes, sir."

victim. In fact, on this record, although appellant has admitted the rape of the victim, he has denied the killing. Compare *Commonwealth v. Ingram, supra* (admission at guilty plea colloquy that appellant "shot and killed" victim sufficient factual basis for murder plea).

The guilty plea colloquy equally fails to establish that appellant understood the nature and elements of the offenses with which he was charged.

"In order to demonstrate that a defendant possesses such understanding, he certainly must be told more than just that he has been charged with murder or robbery, for example. While such terms clearly connote some meaning to the layman, this meaning does not always embrace the basic legal elements of the crime. If this were not the case, there would be no need for instructions to a jury on such points, for certainly, an average defendant cannot be presumed to understand more than an average juror. Thus, for an examination to demonstrate a defendant's understanding of the charge, the record must disclose that the elements of the crime or crimes charged were outlined in understanding terms."

*Commonwealth v. Ingram, supra,* 455 Pa. at 203–04, 316 A.2d at 80. Prior to pleading guilty, appellant was not even informed of the charges against him. He was asked only whether he was pleading guilty or not guilty to the "felonies" with which he was charged. After pleading guilty, appellant was informed that his plea was to second-degree murder. However, he was never informed of the elements of second-degree murder. Nor was appellant informed of the elements, including the principles of felony-murder, which, if proven at the degree of guilt hearing, would permit the degree of murder to be raised from second to first degree. See, e.g., *Commonwealth v. Tabb,* 477 Pa. 115, 383 A.2d 849 (1978).[3]

3. Of course, mere iteration of the elements of the crime is not enough. An explanation of the law in terms of the facts of the case is essential to a voluntary plea. As the Supreme Court of the United States has stated, " 'because a guilty plea is an admission of all the

Not only was there no factual basis upon which to accept appellant's guilty plea, and no demonstration that appellant understood the nature and elements of the offense to which he pled guilty, but also there was no basis upon which the trial court could conclude that appellant understood the consequences of his plea. The guilty plea colloquy did not satisfy even one of the areas of questioning mandated by Pa.R.Crim.P. 319. Rule 319 requires that "at a minimum," the court must elicit the following information from the defendant:

"(1) Does the defendant understand the nature of the charges to which he is pleading guilty?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he has the right to trial by jury?

(4) Does the defendant understand that he is presumed innocent until he is found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?"

Accord, *Commonwealth v. Willis*, 471 Pa. 50, 369 A.2d 1189 (1977); *Commonwealth v. Dilbeck*, 466 Pa. 543, 353 A.2d 824 (1976). See also ABA Project on Minimum Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 4.3 (Approved Draft, 1972) (court should advise defendant of right to trial by jury before accepting waiver). Only the first area of questioning, concerning the defendant's understanding of the nature of the charges to which he was pleading guilty, was explored at all. And, as previously demonstrated, that inquiry was wholly deficient.

elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.' " *Boykin v. Alabama*, 395 U.S. 238, 243 n.5, 89 S.Ct. 1709, 1712 n.5, quoting *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). Accord, *Commonwealth v. Tabb*, 477 Pa. 115, 383 A.2d 849 (1977); *Commonwealth v. Minor*, 467 Pa. 230, 356 A.2d 346 (1976).

II.

■ That appellant's guilty plea was not validly accepted is substantiated by appellant's effort to withdraw the plea shortly after it had been entered. Surely, at the time appellant sought to withdraw the plea, there was no basis for the court's denial of his request.

The court was aware at the time it accepted appellant's plea that, the day before, appellant had informed the court of his desire to change the plea which he would enter from guilty to not guilty. Moreover, it was undisputed at the post-conviction hearing that appellant had "held out for days" refusing to accept the advice of counsel and his mother to plead guilty. The court was also aware that appellant was fifteen years old, had completed second grade, and was of low intelligence. Nonetheless, at the guilty plea colloquy, appellant was not questioned about his previously expressed desire to plead not guilty. Compare *Commonwealth v. Hollenbaugh*, 449 Pa. 6, 295 A.2d 78 (1972) (1968 colloquy which questioned defendant regarding change of plea cited with approval).

Instead of satisfactorily questioning appellant, the trial court relied upon the representation of appellant's counsel, including the following:

"MR. BAXTER: I had full and absolute disclosure from the Commonwealth as to every item of evidence they intended to produce in the case, and that they would produce in the case. I don't think that they will call a witness or present an item of physical evidence that I am not familiar with.

THE COURT: Well, then, the question is then did you make these discussions with the accused in this case in light of the knowledge that you have had?

MR. BAXTER: That's correct.

THE COURT: And you have made reference to the items of evidence that the Commonwealth intends to utilize in this case?

MR. BAXTER: That's correct.

THE COURT: Very well. Under these circumstances I think that the plea as entered by William Hines is knowingly and understandingly made, and therefore the Court will accept the plea as entered."

Notwithstanding defense counsel's representation to the court that he had discussed the Commonwealth's evidence with appellant, defense counsel subsequently made known to the court that he had not even mentioned, much less discussed the potential consequences of, the Commonwealth's possession of the confession in which appellant had admitted raping the victim. This confession was the only direct evidence of appellant's participation in the crime and thus was critical to the prosecution's proof of appellant's responsibility for murder.[4]

The defense attorney then challenged the admissibility of the confession on the ground that the confession was involuntarily given and had been made without having had the advice of counsel or an interested adult. After an immediate hearing on the admissibility of the confession, the court recessed for lunch. When the court reconvened, and before the court announced its ruling that the confession was admissible, defense counsel informed the court that appellant "advised me that he wishes to withdraw his plea, that he no longer desires my representation in this case and that

4. At the degree of guilt hearing, when the Commonwealth sought to introduce the confession, defense counsel stated:
"MR. BAXTER: May it please the Court, I will state for the record that in my opinion and in evaluation of the case, the plea that was presented several days ago was knowingly and intelligently made and was not made based on the knowledge that the police had in their possession a confession of the defendant. As the Court is aware, and I don't know whether it is of record at this stage of the trial, I think it is at the plea stage, I had full disclosure from the Commonwealth of all evidence involved in this case, and in my discussion on several occasions with the defendant and, in all honesty, I never discussed the fact that the Commonwealth had in their possession a confession because I thought there were more important considerations of the evidence to discuss with the defendant at that time, and even at one stage of the Pre-Trial discussion with the District Attorney, he advised me that he might not even use the confession, and so these things were not in my mind when I was discussing the advisability of pleading with the defendant."

his mother intends to retain Thomas Harper to represent him in this matter." Despite this development, the court denied the request without directing any questions to appellant to confirm appellant's understanding of his plea, his desire to withdraw the plea, and his desire regarding representation.[5] It was clear error for the trial court to deny

5. The following colloquy at sidebar took place with defense counsel:
"MR. BAXTER: May it please the Court, over the noon recess and at this time that I came back into the courtroom, my client, William Hines, advised me that he wishes to withdraw his plea, that he no longer desires my representation in this case and that his mother intends to retain Thomas Harper to represent him in this matter, and on that basis, I ask the Court to allow me to withdraw my appearance and representation in this case as an individual Public Defender and, perhaps, if they are going to retain private Counsel, to withdraw the Public Defender's Office. I am communicating this as desired by my client.

JUDGE FIOK: Well, of course, that may be a desire insofar as your client is concerned, and that was indicated to the Court even before we proceeded to the arraignment, at which time there was an indication that he desired specifically to be represented by Mr. Harper, and the Court did call in Mr. Harper and delayed the proceedings in an effort to ascertain from Mr. Harper whether or not, after having spoken not only to the defendant, but his parents, as well, whether he desired to take on the representation, in which event the Court stated in the presence of all that a continuance would be granted under those circumstances, if Mr. Harper was to take on the Defense of this case. We do have a record of the proceedings, a statement of Mr. Harper at that time that he did not and would not represent the defendant. We now have the same situation arising at or about the time that the Commonwealth is close to the conclusion of its case, and while a defendant, with the permission of the Court, may change his plea from guilty to not guilty, it has to be considered in the terms of your representing to the Court that you now desire to withdraw from this case, and have the representation of Mr. Harper, who has turned down this representation, as far as the record at this time is concerned.

MR. BAXTER: I am communicating to you what has been communicated to me, and I feel under the gravity of the case and the seriousness of the case, I have no overwhelming desire to remain in the case if this defendant does not want me; I will, if I am so ordered, but if he doesn't wish my representation, and considering the nature of the case, the Court should permit me to withdraw.

JUDGE FIOK: Mr. Minahan, how much more do you have in the case to present before you conclude your side of the case?

MR. MINAHAN: Assuming I have a favorable ruling on the admission, I would offer the admission next, then one other witness, then that would be it. As you recall, we had a name come up in the evidence, Jefferson, that would be the Jefferson boy and then that would be it.

appellant's request to withdraw his guilty plea simply because appellant made a simultaneous request for new counsel, and without questioning appellant concerning the reasons for withdrawal. See *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592 (1973).

## III.

The Commonwealth attempts to circumvent the requirement of a proper on-the-record colloquy by arguing that testimony of appellant's trial counsel at the post-conviction hearing on appellant's previous PCHA petition establishes that appellant's plea was in fact voluntary. The Commonwealth's argument fails both on its premise and on its facts.

■ The requirement that a guilty plea colloquy must reflect the voluntariness of the plea is based on the fact

JUDGE FIOK: In view of the fact that the testimony of the Commonwealth is about to be concluded when this request of the defendant was conveyed by Defense Counsel to the Court, we do not feel that under the circumstances here involved that permission should be granted to this defendant to withdraw his plea. What, of course, is of more consideration, is that at the time that the plea was entered in this case, the Court took particular pains to make absolute certain, not only through the interrogation of Defense Counsel, but the Court, itself, that this plea as entered was voluntary and freely made, that it was made in consideration of all the factors which have been disclosed to Defense Counsel prior to the commencement of these proceedings and, therefore, a plea which has been made voluntarily at that time and knowingly, should not lightly be withdrawn when the Commonwealth is about to conclude its case. We are also considering the fact that Defense Counsel has indicated to this Court that the defendant desires to be represented by Mr. Harper, and at the very beginning of these proceedings, a record was made prior to the arraignment of this defendant, giving Mr. Harper the opportunity of talking not only to the accused, but his parents, as well, in order to determine whether or not he would undertake a representation of this case, and the record will show that after he had this opportunity to converse with both the accused and his parents, that he refused to enter this case. It, therefore, is the conclusion of this Court that the plea, which has been voluntarily made and entered in this case, shall stand, and permission will not be granted to withdraw such a plea. It is further the direction of this Court that Mr. Baxter, of the Public Defender's Office, shall continue to represent this defendant for the remainder of this case. The opinion of the Court is that the accused, under the circumstances as here has developed, has had proper and adequate representation, and this representation will continue."

that, without such a showing, there is no legitimate basis upon which the trial court may accept the plea as voluntarily entered. See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty §§ 1.4–1.7 (Approved Draft, 1968); Standards Relating to the Function of the Trial Judge § 4.2 (Approved Draft, 1972). As this Court has stated, "an attorney's discussion with his client, outside the court's presence, was never intended to provide the basis for an independent, *judicial* conclusion that the accused understands and admits the specific acts constituting the crime(s) charged." *Commonwealth v. Belgrave*, 445 Pa. 311, 317–18, 285 A.2d 448, 451 (1971) (emphasis in original).

Moreover, without an on-the-record guilty plea colloquy, there can be no proper appellate review. A guilty plea serves as a waiver of all issues on appeal other than the legality of the sentence and the voluntariness of the plea. See *Commonwealth v. Martin*, 445 Pa. 49, 282 A.2d 241 (1971). Thus, without an adequate record, the defendant's right to appeal on the issue of voluntariness is eviscerated, and a defendant who has entered an involuntary plea may nevertheless remain unjustly convicted. In addressing the requirement that a waiver of constitutional rights must be intelligent and knowing, and hence affirmatively made, the Supreme Court of the United States has aptly stated: "no system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens' abdication through unawareness of their constitutional rights." *Escobedo v. Illinois*, 378 U.S. 478, 490, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977 (1964). This Court, like the Supreme Court of the United States, has recognized that

"the best and surest way to assure both that the defendant's rights are protected and that the plea is validly taken is to make an adequate record at the plea hearing:

'What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the

plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought ... and forestalls the spin-off of collateral proceedings that seek to probe murky memories.' "

*Commonwealth v. Minor,* 467 Pa. 230, 237–38, 356 A.2d 346, 349–50 (1976), quoting *Boykin v. Alabama,* 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274 (1969).

The Commonwealth's effort to present testimony at the post-conviction hearing establishing the voluntariness of the plea in no respect satisfactorily probed "murky memories." The defense counsel no longer had any notes concerning his representation of appellant and he could recall few specifics. His only testimony regarding discussions with appellant was:

"So I would say I went into great depth into that evidence; and, then, I discussed the various theories of murder; and it was my opinion, based on the evidence that I saw, that the degree of murder was sustainable regardless of the felony aspect just by the nature of the crime."

The testimony presented at the post-conviction hearing completely fails to establish that there was a factual basis for the guilty plea or that appellant understood either the charges to which he pled guilty or the consequences of his plea.

The manifest injustice on this record of a conviction based on a guilty plea entered in violation of constitutional requirements that the plea be voluntarily made mandates reversal.

Order reversed and case remanded for trial.

LARSEN, J., files a concurring opinion in which FLAHERTY and KAUFFMAN, JJ., join.

NIX, J., concurs in the result.

 

LARSEN, Justice, concurring.

Although I agree with the majority's disposition of this case, I must voice my objection to the majority's reliance upon *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974) and subsequent cases for the purpose of invalidating a guilty plea entered *years* before any of those cases were decided. Those cases and the new rules of criminal procedure which they announced are based upon procedural, rather than constitutional, principles, and should have only prospective effect. Therefore, for the reasons enumerated in the opinion by this writer in *Commonwealth v. Minarik*, 493 Pa. 573, 427 A.2d 623 (1981), I do not concur in the premise underlying the majority opinion, namely, that a guilty plea colloquy which occurred in 1970 must comply with procedures mandated by this Court's cases after 1970.

Nevertheless, I agree with the majority's conclusion that appellant's guilty plea was not entered knowingly, intelligently or voluntarily. In 1970, when appellant pled guilty,

> [t]o be Constitutionally valid, a plea of guilty must have been voluntarily, knowingly and intelligently made, i.e., *with an understanding of the nature of the charges against him, his right to a jury trial and an awareness of the consequences of his plea.*

*Commonwealth v. Belgrave*, 445 Pa. 311, 317, 285 A.2d 448, 450–51 (1971) (citation omitted, emphasis in original). *See also Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 106, 237 A.2d 196, 198 (1968) (a trial court's examination of a defendant should include "an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences").

Appellant's guilty plea falls far short of this standard. Although the trial judge in this case conducted an on-the-record colloquy, that colloquy included no explanation of the nature of the charges against appellant, no mention of appellant's right to a jury trial, and no explanation of any of the consequences of a guilty plea.

Since the colloquy in this case was inadequate to show that appellant's guilty plea was voluntary, knowing and intelligent, even under the standards which existed in 1970, I agree with the majority that the order of the PCHA court must be reversed, appellant's guilty plea must be vacated, and the case must be remanded for a new trial.

FLAHERTY and KAUFFMAN, JJ., join in this concurring opinion.