**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Jeremy Matthew MORRISON,**
**Appellant.**

Superior Court of Pennsylvania.

Submitted March 9, 2005.

Filed June 17, 2005.

Vincent J. Quinn, Lancaster, for appellant.

Donald R. Totaro, Asst. Dist. Atty., Lancaster, for Com., appellee.

BEFORE: HUDOCK, FORD ELLIOTT, JOYCE, ORIE MELVIN, KLEIN, BENDER, BOWES, GANTMAN, and PANELLA, JJ.

OPINION BY BOWES, J.:

¶ 1 Jeremy Matthew Morrison appeals from the September 17, 2003 order denying him PCRA relief. We reject Appel-

lant's challenges to the validity of his guilty plea and affirm.

¶ 2 Appellant was arrested based on the following facts contained in the affidavit of probable cause in the arrest warrant. On September 26, 2001, Willard Scritchfield was working at Highway Oil, a gas station in Mountville, Pennsylvania, when he was robbed at gunpoint by a mustachioed white male in his mid-twenties who was approximately six feet tall. That male held a gun and was accompanied by a Hispanic male who was five feet eight inches tall and approximately the same age. Mr. Scritchfield gave his assailants an unidentified amount of money, and the two men fled in a Saab driven by an African–American male. Mr. Scritchfield obtained a partial license plate number for the car, and police were able to locate its owner. The owner told police that he had lent the car to Tilee James, an African–American male, on the night in question. Police obtained a photograph of James, and Mr. Scritchfield identified him as the driver of the getaway car. James was arrested, confessed, and named Appellant and Jamie Pizzaro Kilby as his two accomplices. Police obtained a photograph of Appellant, who was identified by Mr. Scritchfield "as the person who had used the handgun to rob him." Affidavit of Probable Cause, 9/29/01, at 1.

¶ 3 Appellant was arrested and charged with conspiracy and armed robbery, graded as first degree felonies. The information charged Appellant with these crimes and alleged that Appellant:

Count 1—

did agree with another person/persons that they or one or more of them would engage in conduct which constitutes such crime or an attempt or solicitation to commit such a crime, to wit: actor did agree with Jamie Pizzaro Kilby and Tilee Haseen James to commit the crime of robbery and did in fact aid in the commission of this robbery by holding a handgun to the neck of an employee from Highway Oil, 441 E. Main St., Mountville, Lancaster, County,

Count 2—

did, in the course, of committing a theft, threaten another with or intentionally put him in fear of immediate serious bodily injury, to wit; actor did enter Highway Oil, 441 E. Main St., Mountville, Lancaster County, and did hold a gun at the neck of clerk Scritchfield, demanding money, being in fear of immediate serious bodily injury,

Information, 12/10/01, at 1.

¶ 4 On March 6, 2002, Appellant pled guilty generally to the two charges; there was no plea agreement. The trial court imposed an aggregate sentence of five to ten years incarceration, the applicable mandatory minimum sentence. Appellant was advised of his post-sentencing rights but failed to appeal. On December 23, 2002, Appellant filed a timely petition for post-conviction relief. Counsel was appointed and filed an amended PCRA petition. This appeal followed denial of that petition without a hearing.

¶ 5 On appeal, Appellant raises this question for our review:

Whether the defendant was entitled to a hearing on his amended petition for post-conviction collateral relief when defendant alleged that counsel was ineffective by permitting defendant to plead guilty and not moving to withdraw the guilty plea when the colloquy was defective and defendant's plea was otherwise unknowing and involuntary?

Appellant's brief at 4.

¶ 6 "On appeal from the denial of PCRA relief, our standard of review is whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Abu–Jamal,*

574 Pa. 724, 731, 833 A.2d 719, 723 (2003). We review allegations of counsel's ineffectiveness in connection with a guilty plea under the following standards:

> The standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, *see generally Commonwealth v. Kimball*, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999), under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. *See, e.g., [Commonwealth v.] Allen*, 557 Pa. [135,] 144, 732 A.2d [582,] 587 [ (1999) ] ("Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea.")....

*Commonwealth v. Flanagan*, 578 Pa. 587, 608–09, 854 A.2d 489, 502 (2004). This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea. *Commonwealth v. Watson*, 835 A.2d 786 (Pa.Super.2003). Furthermore,

> [T]he constitutional ineffectiveness standard requires the defendant to rebut the presumption of professional competence by demonstrating that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. (Michael) Pierce*, 567 Pa. 186, 786 A.2d 203, 213 (2001); *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 333 (1999). A failure to satisfy any

prong of the test for ineffectiveness will require rejection of the claim.

*Commonwealth v. Gribble*, 580 Pa. 647, 657, 863 A.2d 455, 460 (2004).

¶ 7 In this case, Appellant alleges that counsel caused him to enter an unknowing and involuntary plea because the colloquy was defective in two respects. Appellant first challenges the sufficiency of the factual basis for the guilty plea. Second, he lays claim to a lack of understanding of the nature of the charges to which he pleaded guilty, suggesting that the record does not support a finding that he understood the subject of the proceedings.

¶ 8 The Commonwealth summarized the factual basis for the plea as follows: "On the 26th of September 2001, the defendant and two other actors went into Highway Oil, 441 East Main Street in Mountville, the defendant held a gun to the clerk and took approximately $99 in cash." N.T. Guilty Plea/Sentencing, 3/6/02, at 2. Thus, the facts as recited by the Commonwealth establish that Appellant took money from the clerk at gunpoint and that he committed that armed robbery with the aid of two other actors. These facts sufficiently prove that a conspiracy and robbery occurred; we are at a loss as to any further elaboration that would have been necessary to establish that Appellant was guilty of the two charges in question. Indeed, Appellant does not even question that these facts, if admitted, were sufficient to establish that he committed the crimes of robbery and conspiracy. Instead, Appellant's dissatisfaction with the factual basis for the guilty plea stems from the fact that "the Court never asked the Defendant what facts he was admitting" and argues that he never pleaded guilty to these facts. Appellant's brief at 14.

¶ 9 We are puzzled by this argument. Appellant admitted that it was his "idea" to plead guilty. N.T. Guilty Plea

and Sentencing, 3/6/02, at 4. He was told by the court that he was pleading guilty to robbery and conspiracy. The written colloquy indicates that those are the charges to which Appellant tendered a guilty plea. Appellant apparently is suggesting that he needed to separately admit, immediately following the delineation of the factual basis for the guilty plea, that he performed those acts. This position has no merit. Appellant pled guilty to these charges and by necessary implication, acknowledged that he performed the acts outlined in the factual basis for the plea. There simply is no legal requirement that a factual basis be separately admitted after its recitation for entry of a valid guilty plea. The guilty plea proceeding is the process by which the defendant admits that he committed the actions outlined in the factual basis for the plea. Appellant entered a guilty plea; *ipso facto,* he admitted to the details of the crimes outlined in the factual basis.

■ ¶ 10 Appellant's second contention is that the record contains no indication that he understood the nature of the charges to which he was pleading guilty because the trial court failed to set forth at the plea colloquy the elements of robbery and conspiracy. Appellant's brief at 13. After careful review, we cannot agree with Appellant's asserted lack of awareness.

¶ 11 The record establishes that Appellant executed both a written guilty plea and a written guilty plea colloquy; at the oral colloquy, Appellant admitted reviewing those documents with his attorney and signing it:

THE COURT: Mr. Morrison, **you signed the guilty plea** and also the guilty plea colloquy?

THE DEFENDANT: Yes.

THE COURT: Your attorney went over the colloquy questions with you before you signed it?

THE DEFENDANT: Yes.

THE COURT: Explained your rights to you?

THE DEFENDANT: Yes.

N.T. Guilty Plea/Sentencing, 3/6/02, at 2 (emphasis added). That written guilty plea colloquy, which is extensive, is contained in the record.[1] Paragraph nineteen wherein Appellant admitted that he was "properly charged and before the Court on those offenses" to which he was pleading guilty is specifically relevant to the present inquiry. Written Guilty Plea Colloquy at ¶ 19. He acknowledged the charges to which he was pleading guilty as robbery, with a twenty-year maximum term of imprisonment, and criminal conspiracy with the same maximum term of confinement. Appellant was told that those sentences could be imposed consecutively and that he faced a forty-year term of incarceration. At the oral colloquy, before he entered his guilty plea, the court told Appellant that his "exposure" was "40 years" incarceration and that the minimum term of imprisonment that he would receive was five years, which was the sentence imposed by the court. N.T. Guilty Plea/Sentencing, 3/6/02, at 3, 4. He was further informed:

The Court: A jury would consist of 12 citizens in Lancaster County and you would participate in the selection of that jury. Do you understand that?

The Defendant: Yes.

The Court: Do you understand that in order to convict you the Commonwealth has the burden of proving each and every element of the crimes charged beyond a reasonable doubt—

1. When this matter was heard by the original panel, the written guilty plea colloquy was not contained in the record. Appellant's motion to the trial court to supplement the record was granted, and the certified record now includes that colloquy.

The Defendant: Yes.

The Court:— to overcome your presumption of innocence. Has anyone made any threats or promises to enforce you to plead guilty today or induce you to plead guilty today?

The Defendant: (Witness shakes head.)

The Court: You understand that a guilty plea has the same effect as if you were tried before a jury or judge sitting without a jury?

The Defendant: Yes.

*Id.* at 3–4.

¶ 12 The record also contains Appellant's written guilty plea, which is particularly pertinent to our inquiry and reads:

I, defendant within named, in the presence of my counsel, do hereby enter my plea of guilty to the within information. Further, **being advised of the offense charged in the information** and of my rights, hereby (in open court) consent to proceed on the within information presented by the attorney for the Commonwealth.

Guilty Plea, 3/6/02, at 1 (emphasis added). The document was executed by Appellant and his counsel and not only referenced the criminal information, but contained a handwritten notation of the specific offenses—robbery and conspiracy graded as first degree felonies.

¶ 13 A valid plea colloquy must delve into six areas: 1) the nature of the charges, 2) the factual basis for the plea, 3) the right to a jury trial, 4) the presumption of innocence, 5) the sentencing ranges, and 6) the plea court's power to deviate from any recommended sentence. *Commonwealth v. Flanagan, supra;* Comment to Pa.R.Crim.P. 590(A)(2).

¶ 14 In this case, the sixth subject is not implicated because there was no plea agreement. The second area, as discussed above, was covered, as were the third,

fourth, and fifth areas, as established in the preceding quotation from the oral colloquy. While the plea court did not specifically delineate each element of the two crimes, the record simply belies Appellant's contention that he was not aware of the nature of the charges.

¶ 15 Our Supreme Court has repeatedly stressed that where the totality of the circumstances establishes that a defendant was aware of the nature of the charges, the plea court's failure to delineate the elements of the crimes at the oral colloquy, standing alone, will not invalidate an otherwise knowing and voluntary guilty plea. *Commonwealth v. Schultz,* 505 Pa. 188, 477 A.2d 1328 (1984); *Commonwealth v. Martinez,* 499 Pa. 417, 453 A.2d 940 (1982); *Commonwealth v. Shaffer,* 498 Pa. 342, 446 A.2d 591 (1982). "Whether notice [of the nature of the charges] has been adequately imparted may be determined from the totality of the circumstances attendant upon the plea[.]" *Martinez, supra* at 420, 453 A.2d at 942.

¶ 16 In *Schultz,* the Supreme Court refused to invalidate a guilty plea to robbery and reckless endangerment and concluded that the defendant was aware of the nature of the charges, despite the fact that the defendant was not told that theft was an element of robbery and even though the defendant had not successfully completed his armed robbery. The defendant's awareness was premised upon the evidence against him outlined at the time of the oral colloquy.

¶ 17 In *Martinez,* the defendant pled guilty to third degree murder and robbery, and the record established that "no recitation of the elements of the crimes" or even the intent aspect of third degree murder was made during the oral colloquy. *Id.* at 419, 453 A.2d at 942. Since the circumstances surrounding the plea established

that it was voluntary and knowing and that the defendant was aware of the nature of the charges based on the extensive evidence of actual guilt presented at the oral colloquy, our Supreme Court stated that it did "not deem this oversight to be fatal . . . ." *Id.* It held, "In a case where ample, competent evidence in support of a guilty plea is made a matter of record, allegations of manifest injustice arising from the guilty plea must go beyond a mere claim of lack of technical recitation of the legal elements of the crimes." *Id.* at 422, 453 A.2d at 943. Similarly, in *Shaffer,* the Court charged the defendant with knowledge of the nature of the offenses despite the lack of review of the elements of the offenses to which he pled guilty because the plea was tendered after the Commonwealth had entered its evidence at trial.

¶ 18 More recently, in *Flanagan, supra,* our Supreme Court reinforced the continued viability of the principles employed in *Schultz* and *Martinez,* stating:

> [W]hile the Court has admonished that a complete failure to inquire into any one of the six, mandatory subjects generally requires reversal, *see, e.g., Commonwealth v. Chumley,* 482 Pa. 626, 634, 394 A.2d 497, 501 (1978); . . . . *see generally Commonwealth v. Ingram,* 455 Pa. 198, 203–05, 316 A.2d 77, 80–81 (1974) (holding that the character of a guilty plea is tested according to the adequacy of the on-the-record colloquy), as both parties acknowledge, in determining the availability of a remedy in the event of a deficient colloquy, it has in more recent cases moved to a more general assessment of the knowing, voluntary, and intelligent character of the plea, considered on the totality of the circumstances . . . .

*Id.* at 606–07, 854 A.2d at 500–01. Further supporting these precepts is the following comment to Pa.R.Crim.P. 590:

> It is advisable that the judge conduct the examination of the defendant. However, paragraph (A) does not prevent defense counsel or the attorney for the Commonwealth from conducting part or all of the examination of the defendant, as permitted by the judge. In addition, nothing in the rule would preclude the use of a written colloquy that is read, completed, signed by the defendant, and made part of the record of the plea proceedings. This written colloquy would have to be supplemented by some on-the-record oral examination. Its use would not, of course, change any other requirements of law, including these rules, regarding the prerequisites of a valid guilty plea or plea of *nolo contendere.*

To summarize, whether a defendant is aware of the nature of the offenses depends on the totality of the circumstances, and a plea will not be invalidated premised solely on the plea court's failure to outline the elements of the crimes at the oral colloquy.

¶ 19 In this case, Appellant executed a document wherein he admitted that he was advised of the robbery and conspiracy offenses outlined in the information. The information clearly sets forth the elements of these crimes. In addition, the facts, as set forth at the oral colloquy, indicate that Appellant pointed a gun at the victim and took cash and was facilitated in his endeavor by two other actors. These facts undoubtedly support the conclusion that Appellant was guilty of robbery and conspiracy. *Cf. Flanagan, supra.* The written colloquy establishes that Appellant understood that by entering his plea, he admitted that he was properly

charged with the offenses to which he was pleading guilty.

¶ 20 The extensive written colloquy also explained the rights Appellant was forfeiting, indicated that Appellant understood the proceedings and was satisfied with his counsel, and explored all of the sentencing and collateral consequences involved in the guilty plea. The plea court went over four of five mandated areas, and the sixth was not implicated. The single omission at the oral colloquy was the plea court's failure to outline the elements of the crimes. However, this failure, standing alone, is not fatal to the plea. It is apparent that Appellant was aware of the nature of the offenses because he executed a document admitting that he was advised of the offenses outlined in the information, which detailed the elements of those offenses. *Commonwealth v. Allen,* 557 Pa. 135, 732 A.2d 582 (1999) (defendant could not claim ignorance that sentences could be imposed consecutively; despite oral colloquy's omission regarding consecutive sentencing, record contained documents establishing defendant's awareness).

¶ 21 Appellant herein faced forty years imprisonment and yet received only the mandatory minimum sentence applicable in this action, which he knew he had to receive because he was informed about its application. The victim of the crime was able to identify Appellant as the perpetrator. The totality of the circumstances establishes that Appellant entered a knowing and voluntary guilty plea and was aware of the nature of the crimes even though the elements of the crimes were not specifically delineated at the oral colloquy. *Schultz, supra; Martinez, supra.*

¶ 22 Finally, Appellant complains about the PCRA court's failure to hold an evidentiary hearing. A PCRA hearing is not a matter of right, and the PCRA court may decline to hold a hearing if there is no genuine issue concerning any material fact and the defendant is not entitled to relief as a matter of law. *Commonwealth v. Hardcastle,* 549 Pa. 450, 701 A.2d 541 (1997); Pa.R.Crim.P. 907(2). In this case, the record belies Appellant's claims that his guilty plea was invalid. The record supports the PCRA court's factual finding that there was no manifest injustice that would mandate withdrawal of this guilty plea. Hence, an evidentiary hearing was not required.

¶ 23 Order affirmed.

¶ 24 Judge KLEIN files a Dissenting Opinion.

### DISSENTING OPINION BY KLEIN, J.:

¶ 1 Because I believe the trial judge failed to meet the minimum requirements for a guilty plea colloquy, I would find that it was improper to dismiss Morrison's PCRA petition *without a hearing.* Accordingly, I must respectfully dissent.

¶ 2 Some of the deficiencies might have been explained away if the PCRA court had held an evidentiary hearing. Perhaps at such a hearing, it could be established that the totality of the circumstances show Morrison did fully understand the nature of the charges and the factual basis to his plea. However, the colloquy on its face fails to pass muster in two significant respects:

1. There never was an explanation of the elements of the crimes, either in the oral colloquy or the written guilty plea colloquy; there is no indication that Morrison understood the nature of the charges.

2. Neither the court nor the Commonwealth adduced a sufficient factual basis underlying the charges on which the plea was based. Rather than indicate what evidence or witnesses would be

produced to establish the offenses, the Commonwealth merely issued a bald statement that the defendant and two other people went into a gas station, held a gun to the clerk, and took $99.

¶ 3 Pennsylvania law does not impose an onerous burden on trial judges to assure that a defendant is making a knowing and understanding decision when he gives up his constitutional rights and pleads guilty. Unfortunately, this case is just one of a number of instances in which the trial judge attempts to short-cut the process and, in doing so, fails to satisfy even the *minimum* standards for a guilty plea colloquy.

¶ 4 In this case, the colloquy comprises only five pages of notes of testimony, and probably took less than five minutes to conduct. Perhaps in some cases one could understand taking such short-cuts, but in most cases short-cuts lead to dead-ends.

¶ 5 Instantly, the crimes at issue were not summary offenses where the sentence would be short probation, but two felonies carrying extensive terms of incarceration. In fact, the robbery carried a mandatory minimum sentence of five years in prison. Moreover, Morrison was a laborer who completed only eight years of schooling, which would prompt one to think it necessary to explore his comprehension of the plea and underlying offenses more fully.

## 1. Failure to explain the elements of the crimes.

¶ 6 The Commonwealth posits that Morrison's oral statements, that he had signed the written guilty plea colloquy after his attorney "went over" the colloquy questions and explained "his rights," were enough to meet constitutional and legal safeguards. I respectfully disagree.

¶ 7 Pennsylvania Rule of Criminal Procedure 590 requires the court to conduct an on-the-record plea colloquy to ensure that a defendant's plea is knowingly and voluntarily tendered. "The guilty plea colloquy must affirmatively demonstrate that the defendant understood what the plea connoted and its consequences." *Commonwealth v. Lewis*, 708 A.2d 497, 501 (Pa.Super.1998) (citation omitted). This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. *Id.*

¶ 8 At a *minimum*, the plea colloquy must inquire into the following six areas: "(1) the nature of the charges; (2) the factual basis of the plea; (3) the right to trial by jury; (4) the presumption of innocence; (5) the permissible range of sentences; and (6) the judge's authority to depart from any recommended sentence." *Commonwealth v. Muhammad*, 794 A.2d 378, 383 (Pa.Super.2002 (citation omitted); Comment to Pa.R.Crim.P. 590.

¶ 9 The law has long emphasized the necessity of an *on-the-record* demonstration that the defendant understood *the elements of the crimes. See Commonwealth v. Allen*, 278 Pa.Super. 501, 420 A.2d 653, 655 (1980) (collecting cases).

¶ 10 In this case, nowhere in the record has there been such a showing. There is absolutely nothing in the oral colloquy, or anywhere else, that explains the elements of either charge of robbery or conspiracy. While the trial judge stated that the Commonwealth had the burden of proving "each and every element of the crimes," (N.T. 3/6/02, at 3), he never explained what those elements *were*.

¶ 11 The written colloquy is likewise silent regarding the elements of the crime. It merely lists the crimes of robbery and conspiracy. It is true that the generic facts as stated by the detective on the record, that Morrison held a gun to the clerk and took $99, might make out a robbery as a felony of the first degree, but

it might not. We do not know what it means to "hold a gun" to the clerk. Was it pointed at him? Were any threats made? Perhaps the clerk was put in fear of death or serious bodily injury, but maybe not. We don't know. Morrison certainly has a right to know that to make out the crime of robbery, such fear has to be created.

¶ 12 The situation with respect to the conspiracy charge is afflicted with even greater constitutional and legal shortcomings. In this regard, the detective only said that the defendant "and two other actors went into Highway Oil, 441 East Main Street in Montville." (N.T. 3/6/02, at 2). Maybe the other two "actors" went in to buy cigarettes and Morrison unilaterally decided to rob the clerk. Nowhere, either in the oral or written colloquy, is there the legal definition of conspiracy. How can a person with an eighth grade education be presumed to know the subtle differences between accomplice liability and conspiracy, or the legal requirement that there be some agreement or understanding that everyone is going to participate in the crime?

¶ 13 With respect to robbery, and even more certainly with respect to the conspiracy, the record is devoid of any showing that Morrison understood the elements of the crime or that anyone explained them to him.

¶ 14 As noted above, this is one of the six mandatory areas set forth by the Pennsylvania Supreme Court. See Commonwealth v. Willis, 471 Pa. 50, 369 A.2d 1189 (1977); Commonwealth v. Dilbeck, 466 Pa. 543, 353 A.2d 824 (1976). See also Commonwealth v. Ingram, 455 Pa. 198, 316 A.2d 77 (1974).

¶ 15 In Willis, the Supreme Court unequivocally held, "Failure to satisfy these [six] minimal requirements will result in reversal." 369 A.2d at 1190. Willis is still good law; it has not been overruled. Concededly, Willis, Dilbeck, and Ingram have

been scaled back over the years so that the totality of the circumstances—as opposed to solely the plea colloquy—should be considered in assessing whether a defendant knowingly and voluntarily entered his plea. See Commonwealth v. Shaffer, 498 Pa. 342, 446 A.2d 591 (1982).

¶ 16 Nonetheless, the six minimum requirements remain indispensably significant because their coverage in the guilty plea process, or lack thereof, goes a long way in illustrating just how knowingly and voluntarily the plea was tendered. See, e.g., Commonwealth v. Flanagan, 578 Pa. 587, 854 A.2d 489 (2004) (failure to satisfy one of six requirements, viewed in totality of circumstances which revealed a second error in the plea process, rendered guilty pleas involuntary and unknowing).

¶ 17 Indeed, the six requirements are so fundamental to the plea process that they are the primary focus of review in guilty plea validity claims. The absence of only one requirement carries considerable weight in our circumspect analysis, the absence of two even greater. We would be remiss to overlook such fundamental deficiencies, particularly where the record does not elsewhere reveal supplemental information—actually comprehended by the accused—to fill the void.

¶ 18 Here, the record is bereft of any showing that the elements of either offense were explained to Morrison. These are not the lone deficiencies. The proffered factual basis was inadequate. Of course, the factual basis for the charges bears distinct import in the guilty plea process, and therefore merits weighty consideration.

2. Failure to state a factual basis for the plea.

¶ 19 Our Supreme Court, in Commonwealth v. Hines, 496 Pa. 555, 437 A.2d 1180 (1981), stated:

Because a guilty plea is not only an admission of conduct but also is an admission of all the elements of a formal criminal charge, and constitutes the waiver of constitutionally-guaranteed rights, the voluntariness of a guilty plea must be affirmatively established.

. . .

In order to satisfy the constitutional requirement that a valid guilty plea must stand as an "intelligent admission of guilt," the law of this Commonwealth has long required that before a judge may properly accept a plea of guilty, a colloquy with the defendant must demonstrate that there is a factual basis for the plea and that the defendant understands the nature and elements of the offense charged.

437 A.2d at 1182.

¶ 20 The circumstances in *Commonwealth v. Belleman*, 300 Pa.Super. 209, 446 A.2d 304 (1982), are remarkably similar to the instant case. In *Belleman*, the defendant pled guilty to the charges of escape and indecent assault. The following factual basis was adduced during the colloquy:

[A]fter being granted permission by Sterling Clements, a prison guard, to go to the bathroom at Seventh and Lehman Streets while you were on work detail with the Lebanon County Prison, that you failed to return and that you left, you ran from Mr. Clements and did not come back to the prison?

446 A.2d at 306. The *Belleman* Court expressed dissatisfaction with the above factual basis, and delving deeper into the record, observed that the record was completely *devoid of any description of the elements of the crime of escape. Id.* at 307. The Court determined that these deficiencies produced an invalid plea, and accordingly, reversed and remanded for trial. *Id.* at 308.

¶ 21 In the instant case, Morrison was not informed of the elements of *either* offense, and the adduced factual basis here is far *more* superficial than that in *Belleman*. A *fortiori*, the deficiencies in the instant case warrant a new trial.

¶ 22 Our Supreme Court's fairly recent decision in *Commonwealth v. Flanagan, supra*, is also instructive. There, the Supreme Court upheld this Court's decision to allow Flanagan to withdraw his guilty plea based on the failure to accurately set forth the factual basis of the plea. In viewing the entire record, the Court spotted a second error—the trial judge had misstated a legal implication of accomplice liability. The *Flanagan* Court concluded that the plea court's failure to adduce a factual basis, combined with the additional error, rendered the plea unknowing and involuntary. *Id.* at 500–501.

¶ 23 Instantly, the factual basis of the plea was virtually nonexistent. And like *Flanagan*, the instant case contains an additional, material error—*i.e.,* the complete absence of statements explaining the elements of either charge.

¶ 24 However, it could be fairly argued that the errors plaguing the instant case are even *greater* than those in *Flanagan*. In *Flanagan*, the compounding error was that the accused was *misinformed* on one of the many relevant principles of law; whereas here, the accused was not informed as to *any* of them, for either offense. Thus, the errors surrounding Morrison's guilty plea are certainly tantamount to those in *Flanagan*, upon which our Supreme Court recently granted relief. As such, I believe that the instant case should be remanded for trial, or at the very least an evidentiary hearing on this issue.

¶ 25 Absent an evidentiary hearing, I believe it impossible to say that the "totality of the circumstances" shows that Morri-

son knew the elements of robbery, much less the elements of conspiracy. And although the trial court adduced a basic factual scenario, namely, holding a gun to a clerk and taking $99, this is far different from explaining the *factual basis* for the plea. We have no idea *how* the Commonwealth would prove the charges. Could the clerk make an identification? Is the clerk willing to do so? Is a co-defendant willing to testify against Morrison? Maybe the police received an anonymous tip that said Morrison carried out the robbery, and the Commonwealth actually had no admissible evidence with which it could prove its case. The record, comprised of both the written and oral guilty plea colloquies, is totally silent on what *evidence* the Commonwealth had with which it could prove the charges. This is the normal way to establish a factual basis for a guilty plea.

¶ 26 Ordinarily, the response to a question such as the one posed by the trial judge in this case, "Do you want to summarize the facts?" includes the facts that would be introduced into evidence. One could expect the detective to say something like, "Harry Smith, the clerk in Highway Oil, 441 East Main Street, Mountville, PA, would testify that on September 26, 2001, three men came into his store. He would testify that Morrison put a gun to his head and demanded the money from the register, and he gave him $99. He called the police as soon as the three men left, and just a few minutes later was approached by an officer who took him to a location one block away where he identi-fied Morrison and the other two men as those who robbed him. Officer Jones would testify that, he received a radio call of a robbery at the gas station, and by coincidence, he was at the same block when he saw Morrison and two other men running from the store. He caught and detained them. The clerk came to the scene from the store only a block away, and positively identified Morrison as the man with the gun."

¶ 27 This is the recitation of *admissible* testimony that establishes a factual basis for the plea. Merely reciting what happened, much less in the most generic of terms, is not enough. If someone is going to waive his constitutional protections and give up the right to trial, he must do so intelligently, and to do so, he should know whether the Commonwealth has enough evidence to prove its case.[2] On its face, the record in this case is devoid of any such information.

¶ 28 Therefore, I believe that it violates Morrison's state rights to refuse to allow him to withdraw his guilty plea without an evidentiary hearing to shed light on the circumstances of this case and supplement the record. I also believe that it violates his federal constitutional rights, and if we do not remand for an evidentiary hearing, the federal courts will. *See Boykin, supra; McCarthy, supra; United States v. Young,* 424 F.2d 1276 (3d. Cir.1970); Fed. R.Crim.P. 11.

¶ 29 At the conclusion of *Flanagan, supra,* our Supreme Court parted with a particularly apt admonition: "[W]e rein-

2. In fact,

mere iteration of the elements of the crime is not enough. *An explanation of the law in terms of the facts of the case is essential to a voluntary plea.* As the Supreme Court of the United States has stated, "[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it can-not be truly voluntary unless the defendant possesses an understanding of the law *in relation to the facts.*"
*Hines* at 1184, *quoting Boykin v. Alabama,* 395 U.S. 238, 243 n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (emphasis supplied).

force our expectation of compliance with the six, straightforward and relatively modest requirements that set the baseline for a valid guilty plea colloquy. *See* Pa. R.Crim.P. 590 (comment)."

¶ 30 Based on the foregoing, I respectfully dissent.