J-S02004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PAUL ADAMS, JR., | |
| Appellant | No. 794 EDA 2015 |

Appeal from the PCRA Order February 19, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000820-2013

BEFORE:  SHOGAN, LAZARUS, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 23, 2016**

Appellant, Paul Adams, Jr., appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> The facts of this case are entirely tragic.  On November 1, 2012 [Appellant], Paul Adams, was 38 years old and living in his home in Wallingford, Delaware County.  [Appellant] is a 1992 graduate of Strath Haven High School and was 20 credits short of a college degree, having previously studied Accounting and French at West Chester University on a full tuition academic scholarship.  [Appellant] served in the U.S. Army Reserves from 1991 to 1999.  At the time of the incident, [Appellant] had primary custody of his 8 year old daughter and a zero prior record score.  Also living in [Appellant's] home and in his guardianship was his nephew, the victim, Tyreece Charlow.

On November 1, 2012 [Appellant] picked up his nephew, six year old Tyreece Char[l]ow at the Nether Providence Elementary School at 3:30 pm. [Appellant] and his nephew walked to their residence at 211 Walnut Road, Nether Providence, Pennsylvania where they ate dinner. After dinner they drove to Chester to pick up their martial arts instructor. They then traveled to West Chester for a 7:00 pm Karate class. Karate practice ended at 9:15 pm. After practice they returned to Chester and then to their residence by approximately 10:00 to 10:15 pm. After arriving home, Tyreece went to the second floor of their residence, brushed his teeth, took a shower, put on his pajamas then returned downstairs to say his prayers. [Appellant] and Tyreece reviewed their plans for the next day, including picking out clothing to wear. According to [Appellant], Tyreece would not listen nor follow directions. [Appellant] attempted to reason with Tyreece. [Appellant] claims Tyreece shut down and would not respond. [Appellant] then set a timer for three minutes. [Appellant] told Tyreece he had three minutes to get things done. When [Appellant] felt Tyreece was not complying, [Appellant] retrieved a belt and struck Tyreece several times. After several lashings, [Appellant] retrieved a wider belt and reset the timer. [Appellant] began "lashing" Tyreece with the larger belt. [Appellant] held Tyreece[']s hands with his own hands while striking him with the belt. When [Appellant] released Tyreece[']s hands, Tyreece fell limp to the ground. This discipline lasted approximately forty five minutes. Tyreece was crying the entire time during the discipline. [Appellant] then cleaned Tyreece's wounds with peroxide. [Appellant] walked Tyreece to his bedroom where he put Tyreece to bed naked. Approximately fifteen minutes later [Appellant] checked in on Tyreece. Tyreece did not move. [Appellant] believed Tyreece was asleep. [Appellant] again checked on Tyreece several hours later. [Appellant] observed Tyreece[']s stomach moving but Tyreece was not responsive. [Appellant] moved Tyreece from his back to his side. At this time [Appellant] noticed a brown liquid coming from Tyreece[']s mouth. [Appellant] then transported Tyreece to Crozer Chester Medical Center.

At 5:19 a.m[.] on November 2, 2012 Tyreece was pronounced dead. The Medical Examiner performed an autopsy and determined that the cause of Tyreece's death was multiple blunt force injuries and the manner of death was a homicide. The postmortem report detailed numerous injuries to Tyreece's

head, neck, chest, abdomen, and back, numerous abrasions and bruises to his extremities, and damage to several of Tyreece's internal organs. There was hemorrhaging of his pancreas. There was hemorrhaging of the small and large bowel. There was hemorrhaging to the abdominal wall. There was hemorrhaging around the bladder. There was hemorrhaging around both testicles. Both of Tyreece's testicles had been crushed and there was hemorrhaging present within his scrotum.

The only regret [Appellant] expressed about Tyreece's beating was that he drew his nephew's blood.

[Appellant] was arrested and charged with numerous offenses[,] the most serious of which was Murder of the First Degree [18 Pa.C.S. § 2502(a)]. On June 27, 2013[,] [Appellant] entered a negotiated plea of Nolo Contendere to Murder of the Third Degree, Possession of Instrument of Crime, Endangering Welfare of Children and Unlawful Restraint of a Minor. In accordance with the negotiated plea agreement, [Appellant] was sentenced to an aggregate of 30 to 60 years confinement. No objections to this sentence or the sentencing proceedings were placed on the record at sentencing and no direct appeal was filed.

On June 27, 2014[,] [Appellant] filed a timely *pro se* PCRA petition. On July 7, 2014[,] PCRA counsel was appointed by [the PCRA court]. After an exhaustive review of the record, on January 20, 2015[,] PCRA counsel filed a **Finley**[1] "No Merit" letter. On January 23, 2015 [the PCRA court] served [Appellant] with a Twenty Day Notice of Intent [to] Dismiss PCRA Petition without a hearing. Thereafter [Appellant's] PCRA was dismissed on February 19, 2015 and this timely appeal followed.

Trial Court Opinion, 5/1/15, at 1-4 (internal footnotes omitted).

Appellant presents the following issues for our review:

I. Whether the PCRA court committed an error of law or abused its discretion when it failed to conduct an evidentiary hearing to develop the record on counsel's ineffectiveness as

---

[1] **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).

counsel failed to subject the prosecution's case to meaningful adversarial testing by filing a pretrial motion to suppress statements made by Appellant, failures to investigate and present a diminished capacity defense, and was PCRA counsel ineffective for failing to raise this claim?

II.    Whether the circumstances of this case where Appellant plead nolo contendere, renders this plea constitutionally invalid in light of deficient performances by counsel's as such caused an unlawful inducement rendering this plea involuntary and not intelligently knowing?

Appellant's Brief at 4 (verbatim) (full capitalization omitted).

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011) (citing *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005)). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id*. (citing *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

In his first issue, Appellant claims that the PCRA court erred by failing to conduct an evidentiary hearing on trial counsel's ineffectiveness. Appellant's Brief at 8. Appellant contends that trial counsel was ineffective for not seeking suppression of Appellant's statements and for declining to investigate and present a diminished capacity defense. *Id.* Specifically, Appellant contends that the police secured a statement from him during a custodial interrogation without counsel's presence after Appellant invoked

his right to counsel, and therefore, counsel should have sought to suppress this statement. *Id.* at 9. Appellant also contends that he was diagnosed with "cranium stynosis" and that counsel was ineffective for failing to investigate or present expert testimony that this diagnosis would establish that Appellant lacked the ability to form a specific intent to kill. *Id.* at 10. Additionally, Appellant contends that PCRA counsel was ineffective for failing to raise these claims. *Id.* at 8. Appellant asserts that the proper remedy is to remand for an evidentiary hearing. *Id.* at 11.

> To prevail in a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness.

*Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Reed*, 42 A.3d 314, 319 (Pa. Super. 2012). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. *Commonwealth v. Williams*, 863 A.2d 505, 513 (Pa. 2004). "The burden of proving ineffectiveness rests with Appellant." *Commonwealth v. Rega*, 933 A.2d 997, 1018 (Pa. 2007).

Additionally, Pa.R.Crim.P. 907, addressing the need for post-conviction hearings, provides, in relevant part, as follows:

(1)  The judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s).  If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal.  The defendant may respond to the proposed dismissal within 20 days of the date of the notice.  The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

(2)  A petition for post-conviction collateral relief may be granted without a hearing when the petition and answer show that there is no genuine issue concerning any material fact and that the defendant is entitled to relief as a matter of law.

Pa.R.Crim.P. 907(1), (2).  Furthermore, "after a defendant has entered a plea of guilty,[2] the only cognizable issues in a post[-]conviction proceeding are the validity of the plea of guilty and the legality of the sentence." *Commonwealth v. Rounsley*, 717 A.2d 537, 538 (Pa. Super. 1998) (citation omitted).

---

[2] "It is well established that a plea of *nolo contendere* is treated as a guilty plea in terms of its effect upon a given case." *Commonwealth v. V.G.*, 9 A.3d 222, 226 (Pa. Super. 2010).

As noted, Appellant argues in his first issue that the PCRA court erred in failing to hold a hearing to develop the record on trial counsel's ineffectiveness for: (1) failing to file a pretrial suppression motion; and (2) failing to investigate and present a diminished capacity defense. Appellant's Brief at 8-11. These claims do not implicate the legality of Appellant's sentence or the validity of his plea and are thus not cognizable in this post-conviction proceeding.[3] ***Rounsley***, 717 A.2d at 538. Accordingly, the PCRA court did not err or abuse its discretion in declining to hold an evidentiary hearing to address these meritless claims. Pa.R.Crim.P. 907(1), (2).

Additionally, in a layered ineffectiveness claim, appellate counsel is not ineffective for failing to raise an ineffective assistance of counsel issue where the underlying claim lacks merit. As this Court has explained:

> To prevail on a claim of appellate counsel ineffectiveness for failure to raise an allegation of trial counsel ineffectiveness, a PCRA petitioner must present a 'layered' claim, *i.e.*, he or she must present argument as to each of the three prongs of the ***Pierce*** test for each layer of allegedly ineffective representation. To establish the arguable merit prong of a claim of appellate counsel ineffectiveness for failure to raise a claim of trial counsel ineffectiveness, the petitioner must prove that trial counsel was ineffective under the three-prong ***Pierce*** standard. If the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of appellate counsel ineffectiveness of necessity must fail, and it is not necessary for the court to address the other two prongs of the ***Pierce*** test as applied to appellate counsel.

_____

[3] To the extent that Appellant asserts that these failings resulted in Appellant entering an involuntary plea, we address that contention in the context of his second issue.

*Paddy*, 15 A.3d at 443 (internal citations omitted).

Because Appellant has failed to establish an underlying claim of trial counsel ineffectiveness, Appellant's claim of appellate counsel ineffectiveness also lacks merit. *Paddy*, 15 A.3d at 443. Accordingly, Appellant is entitled to no relief on his first issue.

In his second claim, Appellant argues that his plea was entered involuntarily, unknowingly, and unintelligently. Appellant's Brief at 11. Appellant asserts that trial counsel's failure to put forth any defense on Appellant's behalf resulted in Appellant unwillingly entering the plea instead of going to trial. *Id.* at 12.

> Our law is clear that, to be valid, a guilty plea must be knowingly, voluntarily and intelligently entered. There is no absolute right to withdraw a guilty plea, and the decision as to whether to allow a defendant to do so is a matter within the sound discretion of the trial court. To withdraw a plea after sentencing, a defendant must make a showing of prejudice amounting to "manifest injustice." "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." A defendant's disappointment in the sentence imposed does not constitute "manifest injustice."

*Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa. Super. 2003).

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002). "The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty[.]" *Commonwealth v. Diaz*, 913 A.2d 871, 873 (Pa. Super. 2006) (citation

omitted). Instead, "the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea." ***Commonwealth v. Morrison***, 878 A.2d 102, 105 (Pa. Super. 2005). "The voluntariness of [the] plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." ***Commonwealth v. Lynch***, 820 A.2d 728, 733 (Pa. Super. 2003) (citation omitted). Therefore, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea." ***Commonwealth v. Boyd***, 835 A.2d 812, 815 (Pa. Super. 2003). "If the ineffective assistance of counsel caused the defendant to enter an involuntary or unknowing plea, the PCRA will afford the defendant relief." ***Lynch***, 820 A.2d at 732.

When a defendant enters a plea to a murder charge, in order to ensure a voluntary, knowing, and intelligent plea, trial courts are required to ask the following questions in the guilty plea colloquy:

> 1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?
>
> 2) Is there a factual basis for the plea?
>
> 3) Does the defendant understand that he or she has the right to a trial by jury?
>
> 4) Does the defendant understand that he or she is presumed innocent until found guilty?
>
> 5) Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?

- 9 -

6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

7) Does the defendant understand that the Commonwealth has a right to have a jury decide the degree of guilt if defendant pleads guilty to murder generally?

Pa.R.Crim.P. 590(C); *see also Pollard,* 832 A.2d at 522–523. "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Commonwealth v. Rush*, 909 A.2d 805, 808 (Pa. Super. 2006). "[W]here the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established." *Id.* at 808. "In determining whether a guilty plea was entered knowingly and voluntarily, ... a court 'is free to consider the totality of the circumstances surrounding the plea.'" *Commonwealth v. Flanagan*, 854 A.2d 489, 513 (Pa. 2004).

Finally, we apply the following when addressing an appellate challenge to the validity of a guilty plea:

> The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

> * * *

> [A] defendant who elects to plead guilty has a duty to answer questions truthfully. We [cannot] permit a defendant to

- 10 -

postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel.

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011).

Here, the record belies Appellant's assertion that his plea was entered involuntarily. First, Appellant executed a written plea agreement which advised him of all criteria outlined under Pa.R.Crim.P. 590 and indicated that Appellant entered the plea knowingly and voluntarily. Appellant completed the lengthy written guilty plea colloquy by initialing every paragraph. Guilty Plea Statement, 6/27/13, at 1-4. Second, the trial court conducted a lengthy oral guilty plea colloquy with Appellant that covered the requirements set forth in Pa.R.Crim.P. 590. N.T., 6/27/13, at 1-42. After the oral colloquy, the trial court, satisfied that Appellant's plea was being entered voluntarily, knowingly and intelligently, accepted Appellant's plea of *nolo contendere*. *Id.* at 34. Specifically, the PCRA court provided the following explanation in support of its conclusion that Appellant's plea was voluntarily, knowingly and intelligently entered:

> The record here plainly demonstrates that [Appellant] knowingly, intelligently, and voluntarily entered a plea of Nolo Contendere. The terms of the negotiated plea agreement were clearly stated to [Appellant]. The Court then informed [Appellant] of the legal consequences of entering a nolo contendere plea. [Appellant] expressed his understanding that a plea of nolo contendere has the same legal effect as a plea of guilty. [Appellant] indicated that he understood that he had the right to a jury trial, was presumed innocent and that the Commonwealth had the burden to prove guilt beyond a reasonable doubt. [Appellant] understood that he waived all of his pre-trial and trial rights including possible defenses by virtue

- 11 -

of the entry of the guilty plea. [Appellant] then indicated he understood each crime he was entering a plea to and counsel reviewed the elements of each crime. [Appellant] acknowledged he understood that he was facing a possible maximum aggregate sentence of 60 years in jail and a $95,000 fine. The District Attorney then offered the Affidavit of Probable Cause supplemented with a Police Report prepared by Nether Providence Police Sergeant Michael Montgomery, the Medical Examiner's Postmortem Report of Tyreece Charlow, a Laboratory Report from the Pennsylvania State Police Bureau of Forensic Services, Number L13373-2, which is a report of a DNA analysis of several belts removed from [Appellant's] residence. Also offered into evidence by the District Attorney were Medical Records from the Emergency Department at Crozer Chester Medical Center for patient, Tyreece Charlow, and the Program from the funeral services of Tyreece Charlow, showing many pictures of Tyreece's short life. [Appellant] stipulated to the factual basis as presented by the Commonwealth for his plea. [Appellant] acknowledged that he had read and reviewed the Affidavit of Probable Cause and the Criminal Complaint and had discussed them with his attorney. [Appellant] then indicated that he had reviewed and understood the Guilty Plea Statement and signed and initialed the document. [Appellant] was then advised of his post sentence rights and indicated to the Court that he understood them. [Appellant] further acknowledged to the Court that he had reviewed [the] Guilty Plea Statement and Statement of Post Sentence Rights with his attorney and that he understood these documents and had answered them truthfully. [Appellant] also informed the court that he was satisfied with Counsel's recommendations and representation.

[Appellant] understood and responded affirmatively to each and every material inquiry posed from the [c]ourt and Counsel during the colloquy. The [c]ourt found [Appellant's] plea to be [knowing], intelligent and voluntary. [Appellant] indicated that he understood all of the rights he was waiving, and that he clearly wished to enter the plea. There is nothing in the record to indicate that the plea was not voluntary.

* * *

Additionally, [Appellant] received the benefit of the negotiated Plea. [Appellant] was charged with first degree murder. His exposure on that charge was a life sentence without

the possibility of parole or a sentence of death. A first degree murder conviction was a real possibility had [Appellant] proceeded to trial. There appeared to be ample evidence related to torture of the child and the brutality of the child's death. Although [Appellant's] sentence is lengthy, he benefitted from entering into the negotiated plea. It would have been illogical and otherwise potentially detrimental to [Appellant] if he attempted to withdraw or modify his previously negotiated sentence. In fact, [Appellant] chose not to. He did not petition to withdraw his plea nor did he file a direct appeal. [Appellant] did not challenge his plea until the instant PCRA petition filed a year to the day after his conviction became final.

Trial Court Opinion, 5/1/15, at 8-11.

We agree with the PCRA court's conclusion. The record reflects that Appellant knowingly and voluntarily entered his plea, and Appellant has failed to establish otherwise. Thus, the underlying claim lacks arguable merit. Accordingly, Appellant has failed to establish a claim of ineffective assistance of counsel. Appellant is therefore entitled to no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2016

- 13 -