J. S42040/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MICHAEL DAVON CRADDOCK, | : | No. 2001 MDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, November 22, 2016,
in the Court of Common Pleas of Dauphin County
Criminal Division at Nos. CP-22-CR-0000145-2013,
CP-22-CR-0003903-2013, CP-22-CR-0004206-2013,
CP-22-CR-0004814-2013, CP-22-CR-0005935-2012

BEFORE: OLSON, J., MOULTON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED AUGUST 29, 2017**

Michael Davon Craddock appeals from the November 22, 2016 order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

Appellant pled ***nolo contendere*** to charges at five docket numbers as part of a negotiated plea. At CP-22-CR-0005935-2012, appellant was charged with manufacturing, delivering, or possessing with intent to manufacture or deliver drugs and was sentenced to a term of imprisonment of two to four years.[1] Additionally, he was charged with recklessly endangering another person, using or possessing drug paraphernalia, driving

---

[1] 35 P.S. § 780-113(a)(30).

while his operating privilege was suspended or revoked, turning movements and required signals.[2] He received no further penalty for these charges.

At CP-22-CR-0000145-2013, appellant was charged with three counts of manufacturing, delivering, or possessing with intent to manufacture or deliver drugs and was sentenced to a term of five to ten years' imprisonment on each count to be served concurrently. He also was charged with criminal use of a communication facility[3] but received no further penalty.

At CP-22-CR-0003903-2013, appellant was charged with two counts of robbery, immediate threat of serious bodily injury; two counts of conspiracy; possession of a firearm prohibited; firearms not to be carried without a license; four counts of simple assault; recklessly endangering another person; and making terroristic threats with the intent to terrorize another person.[4] He received three years' concurrent probation for the robbery charges and possession of a firearm prohibited and no further penalty on the other charges.

At CP-22-CR-0004206-2013, appellant was charged with manufacturing, delivering, or possessing with intent to manufacture or

---

[2] 18 Pa.C.S.A. § 2705, 35 P.S. § 780-113(a)(32), 75 Pa.C.S.A. § 1543(a), and 75 Pa.C.S.A. § 3334(a), respectively.

[3] 18 Pa.C.S.A. § 7512(a).

[4] 18 Pa.C.S.A. §§ 3701(a)(1)(i), 903, 6105(a)(1), 6106(a)(1), 2701(a)(1), 2705, and 2706(a)(1), respectively.

deliver drugs and received a sentence of three years' probation concurrent with his other probationary sentences. He was also charged with the use or possession of drug paraphernalia, two counts of possession of a firearm prohibited, and receiving stolen property, 18 Pa.C.S.A. § 3925(a). He received no further penalty for these convictions.

At CP-22-CR-0004814-2013, appellant was charged with manufacturing, delivering, or possessing with intent to manufacture or deliver drugs and received a sentence of three years' probation concurrent with his other probationary sentences. He was also charged with conspiracy and received no further penalty. In total, appellant received an aggregate sentence of seven to fourteen years' imprisonment to be followed by three years' probation. Appellant received his sentence on June 1, 2015.[5]

On February 24, 2016, appellant moved for relief pursuant to the PCRA.[6] His petition focused on his contention that his trial counsel, Gary Kelley, Esq. ("Attorney Kelley"), was ineffective in that he did not file any motions for suppression or other pre-trial motions and filed for continuances without the knowledge or consent of appellant.

On March 23, 2016, Christopher F. Wilson, Esq. ("Attorney Wilson"), was appointed to represent appellant. On July 13, 2016, appellant

---

[5] Appellant also pled **nolo contendere** to summary traffic offenses. That docket number is not at issue here.

[6] Appellant did not file a direct appeal.

requested an evidentiary hearing and stated that due to Attorney Kelley's ineffectiveness, appellant entered a plea that was not knowing, voluntary, and intelligently made. Appellant specifically claimed that Attorney Kelley did not adequately communicate with him prior to his plea date. Because appellant did not believe that Attorney Kelley was ready to defend him, appellant alleged that he entered the plea of **nolo contendere**. Appellant also alleged that he was unaware of the guideline sentences for the charges before he entered a plea.

The trial court conducted a hearing on November 21, 2016. The trial court summarized the testimony presented at the hearing:

> At the PCRA hearing, Chief Deputy District Attorney Jennifer Gettle testified for the Commonwealth. Attorney Gettle testified that Attorney Gary Kelley asked her to sit down with him and [appellant] to discuss plea negotiations. At such meeting, Attorney Gettle recalled that [appellant] had many family circumstances and spoke with [Gettle] about what he had been doing to change his ways while he was in prison. The meeting was mostly [appellant] attempting to highlight mitigating circumstances regarding his case. Attorney Gettle also recalled that [appellant] had been represented by both Attorney Kell[e]y and prior counsel, Attorney Brian Perry, and [appellant] claimed the case had been continued many times without [appellant's] blessing. Attorney Gettle confirmed that [appellant] was ultimately offered a sentence of 7 to 14 years of imprisonment followed by 3 years of probation; she testified that this would be much less than what [appellant] could have received if found guilty at trial. Specifically, Attorney Gettle noted that one of his drug offenses was in the 42 to 60 month standard range, his robbery offense (just on count 1) had a standard range of 30 to

42 months, and another drug offense with a 24 to 50 month range. There was only so much Attorney Gettle could do with the robbery, given the circumstances.

Attorney Gary Kelley testified next. He stated that it was his understanding that he had been retained for the purpose of negotiating a plea, and that he was seeking to reach a global resolution that was acceptable to [appellant]. Attorney Kelley's recollection was that [appellant] was looking for a plea, did not prefer to go to trial, and that is what ultimately brought them to their meeting with Attorney Gettle. Attorney Kelley specifically stated that he could have tried any of the dockets had [appellant] wanted to proceed, but his instructions were to resolve this case via a negotiated plea. It did not make sense to try the case if a negotiated plea is directed and a meeting is set up [with] the DA. Attorney Kelley also testified that he has proposed jury instructions ready to go in all of his cases. When this [c]ourt asked Attorney Kell[e]y if there was any point in time where [appellant] professed his innocence and wanted to take any of the dockets [to] trial, the answer was no. Attorney Kelley also had concerns about [appellant] making incriminating statements. He testified that [appellant] was a prolific writer and there were one or two letters where statements were made against his interest. Attorney Kelley encouraged him not to write to the DA, but he continued to write and make such statements. Attorney Kelley also testified that he met with [appellant] regularly, numerous times per month. Finally, Attorney Kelley attested that he and [appellant] reviewed the sentencing guidelines and he had concerns over the terrible facts of the case, particularly the robbery. [Appellant] had been picked out of a lineup, had forced a woman to strip, and pistol-whipped another woman. These are facts that Attorney Kelley did not want before a jury.

[Appellant] took the stand as the last witness at the PCRA hearing. [Appellant] stated that his meetings with Attorney Kelley were sporadic and

inconsistent, claiming that he only met with him three or four times. [Appellant] attested that he told Attorney Kelley that he would plead [on] the "4206" docket number, but did not wish to plead on the remaining charges. He said that Attorney Kelley was completely unprepared, with no defense strategy, no witnesses, no pre-trial motions, or motions to suppress. When asked if Attorney Kelley went over the colloquy forms with him, [appellant] answered "yes."[Footnote 1] When asked why he ended up pleading no contest to all dockets, [appellant] claimed that he felt like he wasn't guilty of all the charges, but knew he would get convicted because of the evidence.

> [Footnote 1]: A review of the Nolo Contendere Plea and Sentencing Transcript reveals that [appellant] understood the no-contest plea to all six dockets for a sentencing term of 7 to 14 years followed by 3 years of probation, that he understood the charges, penalties, gave up his right to a jury trial, and that his plea was knowing, voluntary and intelligent.

Trial court opinion, 3/29/17 at 3-5 (citations to record omitted).

By order dated November 22, 2016, the trial court denied the PCRA petition. The trial court determined:

> A review of the record and testimony indicates to this [c]ourt that [appellant] has not demonstrated that counsel's stewardship was deficient in that it resulted in a manifest injustice. The record does not support the claim that counsel facilitated the entry of an unknowing, involuntary, or unintelligent plea. While there were conflicts in testimony at the PCRA hearing, Attorney Kelley reviewed the colloquy forms with [appellant], met with [appellant] several times regarding his case, facilitated a meeting with Chief Deputy District Attorney Jennifer Gettle for purposes of negotiating a plea, was aware of the sentencing

guidelines, and was aware of the seriousness of the facts and charges. [Appellant] has not successfully rebutted the presumption of professional competence. There is no clear evidence that his ineffective assistance claims have merit. Moreover, the conduct pursued by Attorney Kelley had a reasonable basis designed to effectuate [appellant's] interests. A tactical decision was made to negotiate a plea as opposed to risking a much greater sentence in light of the facts, particularly surrounding the robbery. This [c]ourt's pronouncement dismissing [appellant's] PCRA petition is supported by the record. Therefore, such decision should be affirmed.

*Id.* at 5 (citations omitted).

Appellant raises the following issue on appeal: "Whether the PCRA [c]ourt erred by concluding that the plea counsel was not ineffective, and in the failure to find that the [a]ppellant's ***nolle*** [sic] ***contendere*** pleas on the multiple dockets were not voluntary." (Appellant's brief at 3.)

PCRA petitions are subject to the following standard of review:

"[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." ***Commonwealth v. Dennis***, 609 Pa. 442, 17 A.3d 297, 301 (Pa. 2011) (citation omitted). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. *Id.* at 305 (citations omitted). To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence: (1) his conviction or sentence resulted from one or more of the errors enumerated in 42 Pa.C.S. § 9543(a)(2); (2) his claims have not been previously litigated or waived, *id.* § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational,

> strategic or tactical decision by counsel[.]" ***Id.*** § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue[.]" ***Id.*** § 9544(a)(2). "[A]n issue is waived if [appellant] could have raised it but failed to so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." ***Id.*** § 9544(b).

***Commonwealth v. Treiber***, 121 A.3d 435, 444 (Pa. 2015).

Instantly, all of appellant's claims challenge the effectiveness of counsel. To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically, a petitioner must establish that "the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced." ***Commonwealth v. Charleston***, 94 A.3d 1012, 1020 (Pa.Super. 2014), ***appeal denied***, 104 A.3d 523 (Pa. 2014) (citation omitted). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa.Super. 2011), ***appeal denied***, 30 A.3d 487 (Pa. 2011) (citation omitted). Additionally, we note that "counsel cannot be held ineffective for failing to pursue a meritless claim[.]"

*Commonwealth v. Hall*, 867 A.2d 619, 632 (Pa.Super. 2005), *appeal denied*, 895 A.2d 549 (Pa. 2006).

> "On appeal from the denial of PCRA relief, our standard of review is whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Abu-Jamal*, 574 Pa. 724, 731, 833 A.2d 719, 723 (2003). We review allegations of counsel's ineffectiveness in connection with a guilty plea under the following standards:
>
>> The standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, *see generally Commonwealth v. Kimball*, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999), under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. *See, e.g.*, [*Commonwealth v.*] *Allen*, 557 Pa. [135,] 144, 732 A.2d [582,] 587 [(1999)] ("Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea."). . . .
>
> *Commonwealth v. Flanagan*, 578 Pa. 587, 608-09, 854 A.2d 489, 502 (2004). This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea. *Commonwealth v. Watson*, 835 A.2d 786 (Pa.Super. 2003).

*Commonwealth v. Morrison*, 878 A.2d 102, 104-105 (Pa.Super. 2005), *appeal denied*, 887 A.2d 1241 (Pa. 2005).

"Preliminarily, we note that in terms of its effect upon a case, a plea of *nolo contendere* is treated the same as a guilty plea." *Commonwealth v. Leidig*, 850 A.2d 743, 745 (Pa.Super. 2004), citing *Commonwealth v. Miller*, 748 A.2d 733, 735 (Pa.Super. 2000). "In determining whether a plea was voluntarily entered into, an examination of the totality of the circumstances is warranted." *Commonwealth v. Allen*, 732 A.2d 582, 588-589 (Pa. 1999).

We find *Commonwealth v. Barbosa*, 819 A.2d 81 (Pa.Super. 2003), to be instructive because the instant case, like *Barbosa*, involves a negotiated plea agreement with regards to sentencing. (Notes of testimony, 1/28/14 at 12; appellant's brief at 4.) The *Barbosa* court held,

> that if a defendant who entered a negotiated guilty plea was either misinformed or not informed as to the maximum possible sentence he could receive if he went to trial, **and the misinformation or lack of information was material to his decision to accept the negotiated plea**, then manifest injustice is established and the plea may be withdrawn.

*Barbosa*, 819 A.2d at 82 (emphasis added). The court also held that a failure to notify a defendant of the possible maximum sentence in a negotiated plea agreement case would only be considered grounds to withdraw the plea if the defendant's lack of knowledge as to the maximum sentence played a material role in the defendant's decision to accept the plea. *Id.* at 86.

Initially, appellant contends that due to the ineffective assistance of his counsel, he entered a plea for all the dockets that was not knowing or voluntary. On June 1, 2015, appellant executed the guilty plea colloquy and indicated "yes" when asked on the form whether he understood the nature of the charges against him and the maximum penalties for those charges. Appellant also indicated "yes" when asked whether he had discussed the case and the elements of the crimes with his attorney and whether he was satisfied with his attorney's representation. (Guilty plea colloquy, 6/1/15 at 4, ¶¶ 9-11.) Similarly, at his plea hearing, appellant answered "yes" when asked whether he understood the potential penalties for the crimes for which he had been charged, that he understood everything in the plea colloquy and reviewed them with his attorney. (Notes of testimony, 6/1/15 at 3.)

Appellant testified at the PCRA hearing that he discussed suppression motions and potential witnesses to subpoena, but Attorney Kelley failed to move in these directions. (Notes of testimony, 11/12/16 at 62-63.) Appellant testified that Attorney Kelley was unprepared. Consequently, appellant believed he would have lost had he gone to trial. He denied that Attorney Kelley went over the plea colloquy forms with him before he signed them. (*Id.* at 64-65.) On cross-examination, appellant had difficulty identifying what issues and defenses that he wanted Attorney Kelley to raise. (*Id.* at 75.)

Attorney Kelley testified that appellant hired him for the purpose of negotiating a plea, and Attorney Kelley sought a global resolution to the various charges. (*Id.* at 24.) Attorney Kelley testified that he saw no need for any motions *in limine*. (*Id.* at 28.) Attorney Kelley explained that he did not subpoena any witnesses or discuss any trial strategy with appellant because he and appellant were not planning to try any of the cases. (*Id.* at 43-45.) On cross-examination, Attorney Kelley stated that he met with appellant at least every two weeks. He also testified that he reviewed the sentencing guidelines with appellant for the charges he faced. (*Id.* at 50-51.) He also advised appellant that the robbery charge was potentially devastating because he had been picked out of a lineup, had forced a woman to strip, and had pistol whipped another woman. He advised appellant that those were "terrible facts." (*Id.* at 51.)

The trial court credited Attorney Kelley's testimony that he reviewed the colloquy forms with appellant, met with appellant several times regarding the case, facilitated a meeting with the Chief Deputy District Attorney to discuss a plea, was aware of the sentencing guidelines, and the seriousness of the facts and charges.

"A PCRA court's credibility findings are to be accorded great deference. Indeed, where the record supports the PCRA court's credibility determinations, such determinations are binding on a reviewing court."

*Commonwealth v. Dennis*, 17 A.3d 297, 305 (Pa. 2011) (citations omitted.)

Given these credibility determinations, this court agrees with the PCRA court that the record does not support the claim that appellant's plea was not knowing, intelligent, or voluntary due to the ineffectiveness of counsel. The colloquy as well as Attorney Kelley's testimony establish that appellant was aware of the potential penalties he faced. Further, Attorney Kelley explained the tactical reasons why he did not subpoena witnesses and his legal determination that pre-trial motions were unnecessary. Additionally, Chief Deputy District Attorney Gettle explained that appellant could have received a much harsher penalty had he gone to trial on the various cases. Appellant failed to satisfy the first prong of *Pierce*: that his underlying claim was of arguable merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2017