J-S22043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                             :         PENNSYLVANIA
                                             :
              v.                            :
                                             :
                                             :
JODEN ROCCO                           :
                                             :
             Appellant            :    No. 1429 WDA 2022

Appeal from the Judgment of Sentence Entered June 2, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0010885-2018

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:             **FILED: July 21, 2023**

Joden Rocco (Appellant) appeals from the judgment of sentence imposed after he pled guilty to third-degree murder and possession of an instrument of crime.[1] We affirm.

At the guilty plea colloquy, the Commonwealth presented the following summary of events underlying Appellant's plea:

On August 18th, 2018, Dulane Cameron, Jr. [the Victim], a 24-year-old black man, decided to go with his friends, Trei and Tyler Hendon, [] out for the night.

….

[After spending time at one bar, the men] left the bar, and … [t]he three began to walk and engaged with two females named Christine Gerstel and Michaela Dalessio. Christine Gerstel and Michaela Dalessio would have testified that their interaction on the

_____

[1] 18 Pa.C.S.A. §§ 2502(c) and 907(b).

sidewalk with [the Victim] and the Hendon brothers was friendly, nice and flirtatious.

The group continued to walk together, with Miss Gerstel and Miss Dalessio, down North Shore Drive. They can be seen walking together on surveillance footage from Southern Tier and the AT&T Sports building, where the group talks collectively for approximately five to ten minutes on the corner of North Shore Drive and Tony Dorsett Way. The group continued walking, crossing that intersection.

[That same evening, Appellant] began his night at a club[.]

….

Facebook Messenger messages between [Appellant] and another individual, Mitch Beley, established a message exchange [in the hours preceding the murder. Appellant sent several text messages containing racial epithets and speaking approvingly of "stomping 'N'words'."] …

N.T., 2/24/22, at 11-16.

Following the message exchange, Appellant went to a second bar. At that bar, after the African-American bartender gave Appellant some water, Appellant said, "Thanks 'N-word.'" *Id.* at 17. The bartender alerted bar security about the incident, and security attempted to escort Appellant from the bar. *Id.*

[One of the security guards,] John Gyure[ (Gyure),] would have testified that, in his presence, [Appellant] asked two Middle[-]Eastern men for a cigarette; however, they didn't have any. At that time, [] Gyure heard … [Appellant] beg[i]n to chant USSA [*sic*] at the men, as well as Go back to your country, and We will fucking kill you.

*Id.* at 18-19 (internal quotation marks omitted).

- 2 -

Gyure and another security guard tried to remove Appellant from the bar. Appellant initially refused to leave and was verbally menacing with staff. *Id.* at 20. Appellant eventually left the bar, but continued to verbally abuse the security staff outside. *Id.* Tyler Corson, the bar's manager, exited the bar and tried to deescalate the situation. *Id.* at 20-21. Appellant threatened Corson and hit him in the throat. *Id.* at 21.

Appellant then walked toward the area where the Victim and his friends were talking with the two women.

> Michaela Dalessio would have testified that a white man, [Appellant], came out of nowhere[.] … [S]he perceived him to be aggressive and upset.
>
> Christine Gerstel would have testified that she observed the same. A white male approached the group of them and said: "You two look too good to be talking to them," indicating [Appellant] and the Hendon brothers. [Gerstel] further would have testified that [Appellant] called her [] "'N-word' lover."

*Id.* at 23.

Appellant grabbed Tyler Hendon's hair, and a fight ensued between the Victim, the Hendon brothers, and Appellant. *Id.* at 23. Tyler Hendon ultimately released Appellant from a headlock, and Appellant walked away. *Id.* A few minutes later, Appellant turned around, approached the Victim and the Hendon brothers, and began to fight them. *Id.* at 25-26.

> [An eyewitness heard Appellant yell], "You want to pull a knife?" to [the Victim]. Several witnesses began to record the fight on their cell phones]. []
>
> ….

Trei Hendon would have testified that he led his brother, Tyler, away…. In doing so, [the Victim] was alone with [Appellant].

With Trei and Tyler gone and [the Victim] by himself, [Appellant] pull[ed] a knife out of his back pocket. [Appellant] proceed[ed] to close the distance between himself and [the Victim], as [the Victim put] his arms up and walk[ed] backwards. [Appellant] then stab[bed] [the Victim] in the neck, while [the Victim] simultaneously [struck Appellant] in the face.

*Id.* at 27-28.

The Victim died at the scene. *Id.* at 28-29. Appellant fled the scene. *Id.* at 29. The police arrested Appellant later that morning, after Appellant approached two police officers and asked for a ride. *Id.* at 30-31.

On the morning of jury selection on February 24, 2022, Appellant entered an open guilty plea to the above crimes. Following receipt of a pre-sentence investigation report (PSI), on June 2, 2022, the trial court sentenced Appellant to 14 – 40 years in prison, followed by 2 years of probation.

On June 9, 2022, Appellant filed a timely post-sentence motion challenging the  discretionary aspects of his sentence. Appellant also sought a continuance to file a supplemental post-sentence motion. After two continuances, Appellant filed a timely supplemental post-sentence motion on August 25, 2022, seeking, for the first time, to withdraw his guilty plea. The

trial court denied the motions on October 24, 2022.[2]  This timely appeal followed.[3]  Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

I.      Did the trial court err when it denied Appellant's [m]otion to [w]ithdraw [guilty plea] because of a [violation of **Brady v. Maryland**, 373 U.S. 83 (1963)]?

II.     Is there a substantial question as to the discretionary aspects of Appellant's sentence due to the [t]rial [c]ourt's sentence being manifestly unreasonable?

Appellant's Brief at 4.

Appellant first claims the trial court erred in denying his post-sentence motion to withdraw his guilty plea, because the Commonwealth violated **Brady**.  Appellant's Brief at 12-13.  Prior to entry of Appellant's plea, the parties engaged in discovery.  As part of discovery, the Commonwealth sent Appellant a copy of the Victim's autopsy report.  Appellant contends the report stated, "Gunshot residue [(GSR)] from both [of the Victim's] hands was obtained at the beginning of the autopsy."  Appellant's Supplemental Post-

---

[2] More than 120 days passed since the filing of the first post-sentence motion. **See** Pa.R.Crim.P. 720(B)(3)(a).

[3] This Court has found a breakdown in the trial court when a post-sentence motion is not denied within 120 days and/or the clerk of the courts has not deemed the motion denied by operation of law and sent a copy of the order to the parties.  **See Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003).  When a trial court denies a post-sentence motion after the 120-day period and the appellant files a notice of appeal within 30 days of the denial, the appeal is deemed timely.  **See id.**

Sentence Motion, 8/25/22, at 2 (unnumbered); **see id.** at Exhibit C, Autopsy Report, at 14.

Because of this statement, Appellant requested that the Commonwealth turn over the result of the GSR test. **Id.** at 3 (unnumbered). In response, the Commonwealth forwarded an email from George Moore, of the Allegheny County Medical Examiner's Office, where Moore explained that the statement about finding GSR on the Victim's hands was included **in error** and there was no "GSR kit done by me or our lab." **Id.** at 3 (unnumbered); **see id.** at Exhibit D, E-Mails between Commonwealth and George Moore. Nonetheless, Appellant maintains:

> [S]ince a coroner is a bonded officer … the reports issued by the Medical Examiner's Office are presumed reliable and accurate. Therefore, it is [Appellant's] position that a [GSR] kit was tested and the results have not been turned over to the Defense.

**Id.** at 3 (unnumbered).

"It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court." **Commonwealth v. Hart**, 174 A.3d 660, 664 (Pa. Super. 2017). The term discretion

> imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judges. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary action. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable

- 6 -

or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Kehr***, 180 A.3d 754, 756-57 (Pa. Super. 2018) (citation omitted).

There are different standards for reviewing requests to withdraw a guilty plea before and after a sentence is imposed. ***Commonwealth v. Flick***, 802 A.2d 620, 623 (Pa. Super. 2002). Pre-sentence, the court administers its discretion liberally in favor of the accused, and "any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth." ***Commonwealth v. Carrasquillo***, 115 A.3d 1284, 1292 (Pa. 2015). In contrast,

> post-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. A deficient plea does not *per se* establish prejudice on the order of manifest injustice.

***Commonwealth v. Broaden***, 980 A.2d 124, 129 (Pa. Super. 2009) (citations omitted).

We presume when an appellant has entered a guilty plea, he was aware of what he was doing; it is his burden to prove the plea was involuntary. ***See Commonwealth v. McCauley***, 797 A.2d 920, 922 (Pa. Super. 2001). Where

the record demonstrates the trial court conducted a guilty plea colloquy and the appellant understood the nature of the charges against him, the plea is voluntary. *See id.*

A valid plea colloquy examines:

1) the nature of the charges, 2) the factual basis for the plea, 3) the right to a jury trial, 4) the presumption of innocence, 5) the sentencing ranges, and 6) the plea court's power to deviate from any recommended sentence.

*Commonwealth v. Morrison*, 878 A.2d 102, 107 (Pa. Super. 2005) (*en banc*) (citation omitted).

Regarding *Brady* claims, the Pennsylvania Supreme Court has explained:

To succeed on a *Brady* claim, the defendant must show: (1) evidence was suppressed by the prosecution; (2) the evidence, whether exculpatory or impeaching, was favorable to the defendant; and (3) prejudice resulted. A *Brady* violation exists only where the suppressed evidence is material to guilt or punishment, *i.e.*, where there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. In determining whether a reasonable probability of a different outcome has been demonstrated, [t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is shown when the government's suppression of evidence undermines confidence in the outcome of the trial.

*Commonwealth v. Cousar*, 154 A.3d 287, 301 (Pa. 2017) (citations omitted).

Here, the trial court explained its rejection of Appellant's *Brady* claim:

- 8 -

[Appellant's] allegation [regarding the GSR test] is without support in the record. Appellant has brought forth no evidence that the Medical Examiner is lying about the [GSR] testing. To the contrary, the Office of the District Attorney made reasonable inquiry regarding the alleged evidence and ascertained that no such evidence existed. Since Appellant has failed to establish that evidence exists, let alone that it was suppressed by the Commonwealth, his allegation of a ***Brady*** claim fails, and his first issue is without merit.

Trial Court Opinion, 2/9/23, at 3. The record supports the trial court's rationale.

We further observe that Appellant received the autopsy report in late 2018 or early 2019. The Commonwealth notified Appellant on July 15, 2019, that the statement regarding the GSR test was a mistake. Appellant took no further action. He entered his plea more than 2½ years later, on February 24, 2022.

Appellant did not present any ***Brady*** claim at his plea colloquy. During the colloquy, Appellant confirmed he had not been threatened or coerced into pleading guilty and had discussed the issue with counsel. N.T., 2/24/22, at 8. Appellant acknowledged he had answered all questions in the written plea colloquy honestly and understood the "full meaning" of the document. ***Id.*** at 9. Appellant stated he was satisfied with his attorneys. ***Id.*** Appellant agreed that he understood that by pleading guilty he was foregoing a possible justification defense. ***See id.*** at 34 and 36. Again, he did not mention any alleged ***Brady*** violations which may have impacted his decision to plead guilty or to forego a justification defense. ***See id.***

Our review confirms that Appellant's oral and written colloquies met the standards set forth in **Morrison**, **supra**. **See** N.T., 2/24/22, at 1-45; Guilty Plea Colloquy, 2/24/22, at 1-11; **see also Morrison**, 878 A.2d at 107. The record contains no support for Appellant's claim that his guilty plea was not knowing, intelligent, or voluntary because of an alleged **Brady** violation.

Finally, we note that Appellant did not seek withdrawal of his plea in the approximately four months between the guilty plea and sentencing. Appellant first raised this claim six months after his plea (and over two months after sentencing). At that point, Appellant had been aware of the alleged **Brady** violation for over three years.

In sum, we discern no error by the trial court's refusal to allow Appellant to withdraw his guilty plea. **See Morrison**, 878 A.2d at 107; **McCauley**, 797 A.2d at 922; **see also Commonwealth v. Yager**, 685 A.2d 1000, 1004 (Pa. Super. 1996) (*en banc*) ("The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily and intelligently made." (citation omitted)). Appellant's first issue does not merit relief.

In his second issue, Appellant challenges the discretionary aspects of his sentence.[4] Appellant's Brief at 15-20. There is no absolute right to

---

[4] Appellant's brief does not comply with Pa.R.A.P. 2111(a)(6) and (8), 2118, and 2119. Despite these defects, we decline to find waiver.

challenge the discretionary aspects of a sentence. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Before reaching the merits of a discretionary sentencing claim, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Edwards*, 71 A.3d 323, 329–30 (Pa. Super. 2013) (citation omitted).

Appellant preserved his sentencing issues in a post-sentence motion, filed a timely appeal, and included in his brief a statement of the reasons relied upon for allowance of appeal. Therefore, we consider whether Appellant has raised a substantial question.

Appellant contends the sentence was excessive, and the trial court: (1) failed to properly consider mitigating factors; (2) only considered the seriousness of the offense; and (3) only contemplated the need for retribution. Appellant's Brief at 19-20. These claims raise a substantial question. *See Commonwealth v. Summers*, 245 A.3d 686, 692 (Pa. Super. 2021) (concluding a claim that the sentence was harsh and excessive and trial court failed to consider mitigating factors raises a substantial question); *Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question." (citations omitted));

- 11 -

*Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa. Super. 2009) (concluding claim that the trial court only considered the seriousness of the offense raises a substantial question).

We next consider the merits of Appellant's claim mindful of the following:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted).

When a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). We may only vacate a sentence that is within the guidelines if the sentence is "clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2). In addition, when the trial court has had the benefit of a PSI, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

Here, the trial court considered the PSI, its addendum, a sentencing memorandum from the defense, the sentencing guidelines, and testimony

from witnesses on behalf of the Commonwealth and Appellant. N.T., 6/2/22, at 5, 7-63, 102. The trial court discussed the sentencing factors and Appellant's rehabilitative needs. *Id.* at 105-08. However, the court also observed Appellant's demeanor at sentencing, stating that he "walked in laughing and trying to talk to his family." *Id.* at 108. The court stated, "I take rehabilitative needs seriously. I do consider them as [] I do all factors. … I've given a lot of thought to what is the right balance between rehabilitative needs and retribution." *Id.* at 110.

The court further explained:

In imposing its sentences on Appellant, [the trial c]ourt considered the sentencing factors listed in 42 Pa.C.S.A. § 9721(b) (the protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of the defendant), in addition to the Sentencing Guidelines. [The trial c]ourt wrestled with competing factors in fashioning a sentence for Appellant. On one hand, [Appellant's entering] a plea demonstrated an amount of taking responsibility for his actions and saved the Commonwealth the expense of a trial and the emotional trauma for the [V]ictim's family that would inevitably ensue. [The c]ourt considered Appellant's history of childhood trauma and the effect such trauma had on fueling the anger which fueled Appellant's actions. Appellant's history of alcohol abuse and intoxication at the time his crime was committed are additional factors [the trial c]ourt considered.

However, many people have suffered trauma without turning to violence. Few people who abuse alcohol become murderers. [The c]ourt must keep in mind the loss that was suffered. A young man was killed. Appellant, in what could be characterized as a racist, drunken rage, stole the future of [the Victim] and left his family and friends with unanswerable questions. [The c]ourt considered Appellant's substantial need for rehabilitation, his risk to the community, the serious nature of the crimes and the impact of those crimes in imposing a sentence that

- 13 -

allows him to return to society at a reasonably young age if he can rehabilitate himself and the statutory maximum if he cannot. Since [the c]ourt appropriately considered both the aggravating and mitigating factors in fashioning its sentence, no error occurred, and this issue is without merit.

Trial Court Opinion, 2/9/23, at 5-6.

As we discern no abuse of discretion by the trial court, Appellant's sentencing issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2023